UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIAN WADE,                        )   No. EDCV 07-00633 SS
                                    )
                Plaintiff,          )
                                    )   **MEMORANDUM DECISION AND ORDER**
        v.                          )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of the Social          )
Security Administration             )
                                    )
                Defendant.          )
_____   )

     Plaintiff Marian Wade ("Plaintiff") brings this action seeking
to overturn the decision of the Commissioner of the Social Security
Administration (hereinafter the "Commissioner" or the "Agency")
denying her application for Supplemental Security Income ("SSI").
The parties consented, pursuant to 28 U.S.C. § 636(c), to the
jurisdiction of the undersigned United States Magistrate Judge.  This
matter is before the Court on the parties' Joint Stipulation ("Jt.
Stip."), filed on February 13, 2008.  For the reasons stated below,
the decision of the Commissioner is AFFIRMED.

# I.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 5, 2002. (Administrative Record ("AR") 79). Plaintiff alleged that she is disabled due to hepatitis C, spurs in her feet, toes, knees, ankles, and lower back, and discomfort in her shoulder and wrist.[1]   (AR 89). Plaintiff asserts a disability onset date of February 1, 2002.   (AR 89).

The Agency denied Plaintiff's claims for benefits initially and upon reconsideration.   (See AR 51-52).   On May 20, 2004, Administrative Law Judge ("ALJ") Jay E. Levine conducted a hearing to review Plaintiff's claims.   (AR 19-50).   ALJ Levine subsequently denied benefits in a written decision dated June 21, 2004.   (AR 8-17).   The Appeals Council affirmed the ALJ's decision on September 21, 2004.   (AR 4-6).   Plaintiff then brought a civil action in federal district court, which resulted in a decision remanding the matter on February 2, 2006.   (See AR 234-49).   On March 28, 2006, the Appeals Council remanded the case back to the ALJ for further proceedings.   (AR 233).   On December 6, 2006, ALJ Levine held another hearing.   (AR 411-40).   On February 15, 2007, ALJ Levine denied Plaintiff's application in a written decision.   (AR 197-215). Plaintiff commenced the instant action on May 24, 2007.

---

[1]   At the hearing in 2004, Plaintiff also testified that she was overweight and that she suffered from depression.   (AR 23, 42).   She also admitted using marijuana and cocaine up until a month before the hearing.   (AR 35).

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

3

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing her past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking

into account the claimant's residual functional capacity ("RFC"),[3] age, education and work experience. <u>Tackett</u>, 180 F.3d at 1099-1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

**III.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process discussed above. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (AR 203). At step two, the ALJ found that Plaintiff's hepatitis C, degenerative disease of the right knee, left foot hallux valgus deformity status post fusion of the left hammer toe, degenerative disc disease of the lumbar spine, obesity, depressive disorder, and polysubstance abuse were severe impairments, and that Plaintiff's hypertension and bronchitis were non-severe

---

[3]   RFC is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1   impairments.   (Id.).

2

3      Having determined that Plaintiff's polysubstance abuse was a

4   severe impairment, the ALJ then considered the provisions of Section

5   105 of the Contract of America Advancement Act, enacted in 1996,

6   which includes a subsection entitled "Denial of Disability Benefits

7   to Drug Addicts and Alcoholics."   42 U.S.C. § 423(d)(2)(C).[4]   This

8   statute and the regulations promulgated thereunder operate to deny

9   social security disability benefits to claimants whose alcoholism or

10   drug addiction is a contributing factor material to the determination

11   of his or her disability.   See 20 C.F.R. § 416.935.[5]

12

13      Addressing the application of these provisions, the Ninth Circuit

14   held in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001), that

15   the five-step sequential evaluation must first be conducted "without

16   separating out the impact of alcoholism or drug addiction."

17   Bustamante, 262 F.3d at 955.   If after conducting this inquiry, the

18   ALJ concludes that an individual is disabled and there is medical

19   evidence of his drug addiction or alcoholism, then it must be

20   determined whether the claimant would still be found disabled if he

21

22   _____

23      [4]   Section 423(d)(2)(C) provides that "[a]n individual shall
    not be considered to be disabled for purposes of this subchapter if
24   alcoholism or drug addiction would (but for this subparagraph) be a
    contributing factor material to the Commissioner's determination that
25   the individual is disabled."

26      [5]   Section 416.935(b)(1) provides that "[t]he key factor we
    will examine in determining whether drug addiction or alcoholism is
27   a contributing factor material to the determination of disability is
    whether we would still find you disabled if you stopped using drugs
28   or alcohol."

6

stopped using alcohol or drugs. <u>Id.</u> (citing 20 C.F.R. §§ 404.1535, 416.935). At this stage, the claimant would bear the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. <u>Ball v. Massanari</u>, 254 F.3d 817, 822-23 (9th Cir. 2001);

<u>see also</u> <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1245 (9th Cir. 1998)(remanding to give claimant an opportunity to present evidence relevant to this issue).

Here, the ALJ determined that at step three, Plaintiff's polysubstance abuse met sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). (AR 203). The ALJ relied upon the findings of the State Agency psychiatrist to conclude that "when [Plaintiff] is abusing drugs and alcohol, she has marked limitations in her ability" to maintain attention and concentration; perform activities within a schedule; maintain regular attendance, and be punctual; complete a normal workday and workweek without interruptions, and perform at a consistent pace; interact appropriately with other people; and respond appropriately to changes in the work setting. (<u>Id.</u>). Therefore, the ALJ found that Plaintiff was disabled when actively using drugs and alcohol. (<u>Id.</u>).

The ALJ proceeded to consider whether Plaintiff would still be found disabled if she stopped using alcohol or drugs. (AR 204). The ALJ determined at step three that if Plaintiff stopped the substance

use, she would continue to have severe impairments but that the impairments singly or in combination would not meet or medically equal a listed impairment. (Id.).

At step four, the ALJ found that Plaintiff would have the mental RFC to "perform entry level work consisting of working with things rather than people" if she was not engaged in substance abuse. (AR 204). The ALJ determined that Plaintiff had the RFC to perform a narrow range of light work consisting of lifting and carrying twenty pounds occasionally and ten pounds frequently, and sitting for six hours and standing and walking for four hours out of an eight-hour workday. (AR 204). The ALJ determined that Plaintiff could not climb ladders, but could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. (AR 204). The ALJ found that Plaintiff's statements regarding the effect of her symptoms on her ability to do basic work activities were not entirely credible. (AR 205).

With Plaintiff's RFC in mind, at step four the ALJ determined that Plaintiff was capable of performing her past relevant work if she stopped the substance abuse. (AR 213). Although not required to do so, the ALJ additionally found at step five, consistent with the testimony of a vocational expert, that if Plaintiff stopped the substance abuse she could perform other work existing in significant numbers in the national and regional economies. (AR 214). The ALJ concluded that Plaintiff's substance abuse was a contributing factor material to the determination of disability because she would not be disabled if she stopped abusing illegal drugs. (AR 215). Accordingly, the ALJ found that Plaintiff was not disabled within the

meaning of the Social Security Act.   (Id.).

## IV.
### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21.

## V.
### DISCUSSION

Plaintiff contends that the Commissioner's decision should be

9

overturned for four reasons.  First, she claims that the ALJ did not properly consider the findings of State agency physician Dr. H. Amado, who completed a mental residual functional capacity assessment of Plaintiff.  (Jt. Stip. at 3-5).  Second, she claims that the ALJ did not properly consider the opinions of Dr. Bruce Bogost and Dr. Jesse De Vera regarding the side effects of her medication.  (Jt. Stip. at 12-14).  Third, Plaintiff claims that the ALJ failed to pose a hypothetical question to the vocational expert that incorporated the limitations found by Drs. Amado, Bogost, and De Vera.  (Jt. Stip. at 16-18).  Fourth, she claims that the ALJ erroneously determined that she could perform her "past relevant work" in light of the limitations assessed by Dr. Amado. (Jt. Stip. at 20) (although in fact her argument addresses the ALJ's subsequent determination that she could perform other work existing in the economy). (Jt. Stip. at 20-23).  As set forth below, the Court disagrees with Plaintiff's contentions and instead finds that the ALJ's decision should be affirmed.

**A.   Plaintiff's Claim That The ALJ Failed to Consider the Non-Examining Physician's Opinion Does Not Warrant Remand**

Plaintiff contends that the ALJ "failed to consider" the mental assessment completed by Dr. H. Amado, a state agency physician, on October 30, 2004.  (Jt. Stip. at 3-4).  In his assessment Dr. Amado found that "without" drug or alcohol use, Plaintiff was moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a

10

schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting.   (AR 295-96). Plaintiff argues that the ALJ did not consider these findings and "provided no reasons whatsoever for his omission of Dr. Amado's opinion that identifies Plaintiff's

moderate functional limitations."   (Jt. Stip. at 5).   Plaintiff's claim is not supported by either the ALJ's decision or the record.

Although the ALJ did not mention Dr. Amado by name in his decision, the record clearly demonstrates that the ALJ referenced and relied upon Dr. Amado's findings, which noted Plaintiff's long history of cocaine and marijuana dependance, in determining that Plaintiff was not disabled.   In his paragraph summarizing Plaintiff's functional capacity assessment, Dr. Amado wrote:

In the presence of DA/A[6], claimant could very doubtfully maintain gainful employment of any type.   However, in

_____

[6]   Although Dr. Amado did not elaborate on the meaning of this abbreviation, it appears to mean "Drug Addiction and/or Alcoholism." Plaintiff's history of drug use is well documented in the record. For example, at one point Plaintiff admitted that she "has used crack cocaine on and off since 1984 . . . multiple arrests/prison [illegible] for crack cocaine possession.   No prison time since 1995."   (AR 361).   At other times, Plaintiff admitted an addiction to marijuana and cocaine.   (AR 368, 372, 389-90, 391).

1    absence of same and with good compliance, the clinical

2    picture would change.

3

4    After noting Dr. Amado's findings regarding Plaintiff's functional

5    limitations when using drugs and alcohol, (AR 203 (citing AR 299-

6    302)), the ALJ then determined that if Plaintiff stopped her

7    substance use, her depressive disorder would cause the moderate

8    difficulties in maintaining social functioning and maintaining

9    concentration, persistence, or pace found by the "State Agency

10    psychiatrists." (AR 204). This conclusion is entirely consistent

11    with Dr. Amado's findings. (See AR 295-96). Moreover, it is clear

12    the ALJ had Dr. Amado's findings in mind: Dr. Amado is the only state

13    agency psychiatrist featured in the record and is the only

14    psychiatrist (other than Dr. Mark Pierce whose opinion and findings

15    the ALJ addressed separately and which are essentially consistent

16    with Dr. Amado's findings)(AR 209-10 (citing AR 388-97)), to have

17    completed a mental RFC assessment of Plaintiff.[7] Thus, it is evident

18    that the ALJ was referring to Dr. Amado in his decision and that he

19    actually agreed with Dr. Amado's findings. Because the ALJ concurred

20    with Dr. Amado's opinion, he was not required to provide reasons for

21    rejecting it. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.

22    1999)("Clear and convincing reasons are not required, however, when

23    there is no conflict" between the ALJ's reasoning and physician's

24    _____

25    [7]   Review of this issue is somewhat complicated by the omission

26    in the Administrative Record of several pages, 288 through 291, of
      Dr. Amado's completed Psychiatric Review Technique Form.

27    Nevertheless, even without this additional information, it is obvious
      that the ALJ considered, and adopted, Dr. Amado's findings as

28    discussed above.

12

1 opinion). Plaintiff's claim does not warrant remand.

2

3 **B.  The ALJ Did Not Err By Declining To Address The Alleged Side**

4 **Effects Of Plaintiff's Medication**

5

6 Plaintiff contends that the ALJ erred by failing to consider

7 findings by treating physicians Dr. Bruce Bogost and Dr. Jesse De

8 Vera that Plaintiff experienced side effects from the medications she

9 was taking.  (Jt. Stip. at 12-13).  Specifically, Plaintiff contends

10 that Dr. Bogost noted on November 8, 2004 and again on December 7,

11 2004 that Plaintiff was either experiencing or complaining of

12 akathisia.[8]  (AR 262, 264).  On June 21, 2005, Dr. De Vera noted that

13 Plaintiff complained that her whole body "felt like cramps in charlie

14 horse" and observed that Plaintiff was "fidgety."  (AR 347).

15 Plaintiff argues that the ALJ should have explicitly considered these

16 "opinions" by Dr. Bogost and Dr. De Vera and was required to provide

17 clear and convincing reasons before rejecting them.  (Jt. Stip. at

18 12-13).

19

20 Although the "type, dosage, effectiveness, and side effects" of

21 any medication taken by the claimant to alleviate his or her pain or

22 other symptoms are factors relevant to a disability determination and

23 should be considered by the ALJ, 20 C.F.R. § 404.1529(c)(3)(iv); see

24 also Social Security Ruling ("SSR") 96-8p, available at, 1996 WL

25

26     [8]   Akathisia is a "movement disorder characterized by a feeling
of inner restlessness and a compelling need to be in constant

27 motion."  See  Online Medical Dictionary, at

28 http://www.medterms.com/scrip/main/art.asp?articlekey=33264

374184, a claimant bears the burden of proving that an impairment, including a medication's side effects, is disabling. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (upholding the ALJ's rejection of the plaintiff's statements that her medications affected her concentration and made her dizzy where no objective evidence was put forth and the ALJ properly found her testimony was generally not credible). For the following reasons, Plaintiff has not met her burden in this case.

First, the record provides little or no support for Plaintiff's claim that these side effects are disabling. Only three treatment notes refer to the claimed side effects and these notes do not appear to link the alleged side effects to any specific medication taken by Plaintiff.[9] Other treatment notes by Dr. Bogost dated September 27, 2004 and January 31, 2005, that is, shortly before and after the two notes mentioning akathisia, state that Plaintiff was not experiencing any medication side effects. (See AR 260, 265). Moreover, the

---

[9] Nor is it clear from these notes, other than in Dr. De Vera's brief description of Plaintiff as "fidgety," (AR 347), whether the physicians observed the alleged side effects or whether they were simply reporting Plaintiff's complaints. If the latter, the claimed side effects, unsupported by medical evidence, were no more than additional subjective complaint testimony, the value of which was discounted by the ALJ in his credibility analysis and which Plaintiff has not challenged in this action. See Thomas, 278 F.3d at 960 (finding no error in excluding side-effects where the only evidence was claimant's testimony, and where the ALJ had found the claimant not credible).

14

record substantially supports the ALJ's determination, (AR 209, 210, 211), that Plaintiff has not always been compliant in taking her medications. (See, e.g., AR 357 (noting on August 24, 2004 that Plaintiff should "improve compliance" in taking medications); AR 349 (noting on May 17, 2005 that Plaintiff was "not taking Depakote as prescribed")). Indeed, the record shows that Plaintiff told her health care provider in November 2006 that she had been off medication completely since June 2006. (AR 371).

Furthermore, the record substantially supports the ALJ's findings that Plaintiff's testimony regarding her use of alcohol, marijuana and cocaine has been inconsistent, (see AR 209, 210), and that Plaintiff "continued to use marijuana for self-medication" through the date of his decision. (AR 208 (citing AR 359)). At the May 20, 2004 hearing, Plaintiff testified that she had last used marijuana and cocaine in March and April 2004. (AR 23). However, the ALJ observed that Plaintiff appeared to "be high" during the May 20, 2004 hearing. (AR 210).

At the December 6, 2006 hearing, Plaintiff testified that it had been "over a year" since she had used crack cocaine or marijuana, (AR 423), and that the last occasion had been in July or August 2005. (AR 423-24). However, Plaintiff separately acknowledged "self-medicating" with marijuana both on August 19, 2004, (AR 359), and again on November 28, 2006. (AR 368). Plaintiff also gave varying reports regarding when she last used cocaine, (see AR 256 (May 2004); AR 260 (August 2004)), and Dr. Mark Pierce suggested in his December 2006 report that she may

15

have been affected by substance abuse at the time he examined her. (See AR 391).  Plaintiff acknowledged at the December 6, 2006 hearing that she continued to drink alcohol.  (AR 425).

In sum, the record shows that Plaintiff was not compliant in taking her medications during the same period that she complained of experiencing side effects.  Moreover, Plaintiff continued to use illegal drugs, which produce side effects of their own, throughout the same period.[10]  For these reasons, Plaintiff has not demonstrated that the alleged side effects were in fact associated with any of her medications, see Varney v. Sec'y of Health and Human Services, 846 F.2d 581, 585 (9th Cir.) (holding that specific findings must be made in disregarding side effects testimony "as long as the side effects are in fact associated with the claimant's medications"), rev'd on other grounds upon reh'g, 859 F.2d 1396 (9th Cir. 1988), and has failed to meet her burden of demonstrating that the side effects have affected her ability to sustain employment.  See Miller, 770 F.2d at 849 (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); see also Osenbrock, 240 F.3d at 1164 (finding no substantial evidence of

---

[10]     For example, cocaine causes "feelings of restlessness, irritability, and anxiety" in some users.  See "Cocaine," at http://www.drugs.com/cocaine.html.  Furthermore, drug users who attempt to stop using marijuana are likely to experience side effects such as irritability, anger, and restlessness.  See, e.g., Patrick Zickler, Study Demonstrates That Marijuana Smokers Experience Significant Withdrawal, National Institute of Drug Abuse Research Findings Vol. 17, No. 3 (October 2002), available at http://www.drugabuse.gov/NIDA_notes/NNVol17N3/Demonstrates.html.

1  impairment from side effects where the record contained "passing
2  mentions of the side effects of [claimant's] medication in some of
3  the medical records, but there was no evidence of side effects severe
4  enough to interfere with [claimant's] ability to work"). Any failure
5  by the ALJ to more directly address Plaintiff's alleged side effects
6  was nothing more than harmless error. See Burch v. Barnhart, 400
7  F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be
8  reversed for errors that are harmless"). This claim does not warrant
9  remand.

10

11  **C.   The ALJ's Hypothetical Question to the Vocational Expert At Step**
12  **Four Does Not Warrant Remand**

13

14  Plaintiff contends that the ALJ failed to incorporate the
15  moderate limitations assessed by Dr. Amado, or the medication side
16  effects discussed above, into the hypothetical questions the ALJ
17  posed to the vocational expert. (Jt. Stip. at 17). This claim does
18  not warrant remand for the reasons set forth below.

19

20  At step four of the sequential evaluation of disability, the
21  claimant has the burden of showing that he or she can no longer
22  perform her past relevant work. Pinto v. Massanari, 249 F.3d 840,
23  844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(e) and 416.920(e). "[T]he
24  ALJ still has a duty to make the requisite factual findings to
25  support his conclusion." Pinto, 249 F.3d at 844. However, the ALJ
26  is not required to obtain the testimony of a vocational expert at the
27  fourth step. Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); see
28  also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding

that where claimant failed to show he was unable to return to his previous job, the vocational expert's testimony was "useful, but not required," and "[w]hether or not the ALJ erred" in his hypothetical question "is thus irrelevant given the other reliable evidence.")

Here, the ALJ did seek the vocational expert's testimony on whether Plaintiff could perform her past relevant work, (AR 433-36), and relied on that testimony in his decision. (AR 213). The ALJ's first hypothetical question to the vocational expert assumed an individual of Plaintiff's age, education, and prior work experience who could lift twenty pounds occasionally and ten pounds frequently, stand and walk four hours and sit six hours in an eight-hour day, occasionally stoop, bend, kneel, crouch, and crawl, climb stairs, but no ladders, and who could not work in extreme heat. (AR 435). In other words, this hypothetical incorporated Plaintiff's exertional RFC as ultimately found by the ALJ. (See AR 208). The vocational expert testified that such an individual could not perform Plaintiff's past relevant work as a pharmacy messenger because, as the ALJ suggested at the hearing, it would be "precluded by the walking."[11]  (AR 435). Thus, it is apparent that the ALJ erred, or perhaps misspoke, in determining in his written decision that "the vocational expert testified that the claimant could perform her past relevant work as a pharmacy messenger." (AR 213). The vocational expert in fact testified to the contrary in light of

---

[11]  This presumably refers to the four hour walking restriction incorporated in the hypothetical, which would preclude the individual from meeting the "light" exertional requirement of the pharmacy messenger position.

18

1   Plaintiff's exertional restrictions.   (AR 435-36).[12]

2

3       However, any error committed is harmless because, as discussed
4   in the following section, the ALJ adequately determined at step five
5   that there was work in the economy that Plaintiff could perform,
6   other than work as a pharmacy messenger, with her specific
7   limitation.   Because the error mentioned above ultimately had no
8   impact on the outcome of the case, it was harmless and does not
9   require remand.   See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.
10  1990) (harmless error rule applies to review of administrative
11  decisions regarding disability); Booz v. Sec'y of Health and Human
12  Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same).

13

14  D.   **The ALJ's Determination That Plaintiff Could Perform Other Work**
15       **Was Supported By Substantial Evidence In The Record**

16

17      Plaintiff contends that the ALJ's determination that she could
18  perform the occupations identified by the vocational expert was
19  erroneous.   (Jt. Stip. at 20-23).   This Court disagrees.

20

21      As set forth above, the burden of proof rests with the

22

23  _____

        [12]   Because the ALJ erred in mischaracterizing the vocational
24  expert's testimony, Plaintiff's claim that he failed to incorporate
    the moderate limitations assessed by Dr. Amado is moot.
25  Additionally, for the reasons given above, Plaintiff's claimed side
    effects are not supported by substantial evidence in the record and
26  so the ALJ did not err by failing to incorporate them in his
    hypothetical questions.   See Osenbrock, 240 F.3d at 1164-65 ("The ALJ
27  is free to accept or reject restrictions in a hypothetical question
    that are not supported by substantial evidence.").
28

                                   19

Commissioner at step five of the sequential analysis, and where a claimant has both exertional and nonexertional limitations, the ALJ must take the testimony of a vocational expert.  <u>Moore</u>, 216 F.3d at 869.  At step five, "[i]n order for the testimony of a [vocational expert] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record."  <u>Thomas</u>, 278 F.3d at 956 (internal quotation marks and citation omitted); <u>see also</u> <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 793 (9th Cir. 1997) ("[T]he ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations.").

The ALJ provided the VE with three different hypotheticals.  The first hypothetical assumed an individual Plaintiff's age, education and prior work experience.  In addition, the hypothetical assumed a person who could lift and carry 20 pounds occasionally, ten pounds frequently, and could stand and walk four hours out of an eight hour day and could sit six hours.  The person could do occasional stooping and bending, could climb stairs and the person should work in an area without extreme heat.  (AR 435).  Also, the person is good for entry level work and working around things, not people.  (<u>Id.</u>).  The vocational expert responded that such an individual could work at the light unskilled level, as a mail clerk, listed in the Dictionary of Occupational Titles ("DOT") at No. 209.687-026, sewing machine operator, DOT No. 689.685-118, and production line solderer, DOT No. 813.684-022, all of which exist in significant numbers both regionally and nationally.  (AR 436).

For the second hypothetical, the ALJ added the restrictions that the person could only walk and stand two hours.  The VE testified that this would eliminate the mail clerk position, but the sewing machine operator and production line solderer would be fine and she added wire worker, DOT No. 728.684-022.  (AR 436).

For hypothetical number three, the ALJ assumed the same restrictions as the prior hypothetical but added that the person would be off task at least twenty percent of the time due to pain or "psychological based" symptoms.  The VE found there was no work for this hypothetical person.  (AR 437).

\\
\\
\\
\\
\\
\\
\\

In his decision, the ALJ ultimately found, consistent with the vocational expert's testimony, that Plaintiff could perform the jobs at the light exertional level, such as mail clerk, sewing machine operator, solderer, and wire worker.[13]  (AR 214).

The ALJ made the following RFC finding:

---

[13]  Assuming that Plaintiff could only stand or walk two hours out of an eight-hour workday, the vocational expert testified that she could still perform all these jobs with the exception of mail clerk.  (AR 436).

21

1    If the claimant stopped the substance use, the claimant
2    would have the mental residual functional capacity to
3    perform entry level work consisting of working with things
4    rather than people. Her physical impairments would
5    restrict her to a narrow range of light exertion consisting
6    of lifting and carrying 20 pounds occasionally and 10
7    pounds frequently. The claimant could sit for 6 hours out
8    of an 8-hour work day, and she could stand and walk for 4
9    hours out of an 8-hour work day. The claimant could not
10   climb ladders, but she could occasionally climb stairs.
11   She could occasionally balance, stoop, kneel, crouch, and
12   crawl.

14   (AR 204).

16   Although there are references to mental restrictions found
17   elsewhere in the ALJ's decision, the Court finds that any omission of
18   such restrictions from the hypotheticals was harmless error. The
19   first and second hypothetical were substantially consistent with the
20   ALJ's ultimate RFC finding. The vocational expert identified jobs
21   that can be performed by an individual with Plaintiff's RFC.

23   Even if the ALJ had included the additional mental limitations
24   referenced in his decision in hypothetical questions, the result
25   would be the same. As previously discussed, the ALJ found that when
26   Plaintiff was not using illicit drugs, her depressive disorder would
27   cause her moderate difficulties in maintaining social functioning and
28   moderate difficulties in maintaining concentration, persistence, or

22

1    pace.   (AR 204).   These limitations would not prohibit Plaintiff from

2    performing the jobs described by the vocational expert, _i.e._, mail

3    clerk, sewing machine operator, production line solderer, and wire

4    worker.

5

6        The DOT description of the mail clerk job indicates that it

7    requires a reasoning level of three.   See DOT No. 209.687-026.

8    Reasoning level three requires an employee to "[a]pply commonsense

9    understanding to carry out instructions furnished in written, oral,

10   or diagrammatic form.   Deal with problems involving several concrete

11   variables in or from standardized situations." See id.   The sewing

12   machine operator, production line solderer, and wireworker jobs only

13   require a reasoning level of two.   See DOT Nos. 689.685-118, 813.684-

14   022 & 728.684-022.   Reasoning level two requires an employee to

15   "[a]pply commonsense understanding to carry out detailed but

16   uninvolved written or oral instructions.   Deal with problems

17   involving a few concrete

18

19

20

21   variables I or from standardized situations." See id.   Plaintiff's

22   moderate limitations in social functioning, concentration,

23   persistence, or pace would not prevent Plaintiff from performing work

24   at the reasoning level three or two.

25

26       Moreover, all the jobs described by the vocational expert require

27   only "repetitive or short-cycle work."   See DOT Nos. 209.687-026,

28   689.685-118, 813.684-022 & 728.684-022.   Plaintiff's moderate

23

1  counsel for both parties.

2

3  DATED: April 14, 2008.                          /S/

4                                    _____
                                          SUZANNE H. SEGAL
5                                    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28